
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ SEP 1 8 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT CLEARY and JEANNETTE CLEARY,

Plaintiffs,

- against -

BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC/MICROVASIVE, BOSTON SCIENTIFIC GLEN FALLS CORPORATION,

Defendants.

---

**MEMORANDUM DECISION AND ORDER REMANDING CASE**

CV-06-3423 (BMC) (MLO)

**COGAN**, District Judge.

In this removed action, I raised *sua sponte* the issue of whether there is diversity jurisdiction. Having received submissions and heard argument from the parties, I remand the action to state court.

## BACKGROUND

According to the complaint, in 2002, plaintiff Robert Cleary had an Ultraflex tracheal stent implanted in his throat to alleviate shortness of breath. The stent later fractured, causing inflammation and infection, and plaintiff underwent additional procedures to have pieces of the stent removed and ultimately a tracheal tube inserted. Cleary and his wife filed suit in New York Supreme Court, alleging that defendants Boston Scientific Corporation ("BSC"), Boston Scientific/Microvasive, and Boston Scientific Glens Falls Corporation ("Glens Falls") were liable for the design, manufacture, marketing and distribution of the Ultraflex stent, and seeking damages.

Defendants timely removed the case to this Court on the basis of diversity of citizenship. Defendants allege that diversity exists between plaintiffs and Boston Scientific Corporation and its operating division, Boston Scientific/Microvasive, but acknowledge that diversity is lacking between plaintiffs, citizens of New York, and defendant Glens Falls, which has its principal place of business in New York. Nonetheless, defendants claim that jurisdiction is proper because plaintiffs fraudulently joined Glens Falls, which had nothing to do with the Ultraflex stent, in order to defeat diversity and prevent removal. Therefore, defendants argue, the Court should disregard Glens Falls' citizenship for purposes of subject matter jurisdiction.

Finding defendants' showing of fraudulent joinder in their removal petition insufficient, I issued an Order to Show Cause. It required the parties to demonstrate why I should not dismiss Glens Falls if it was fraudulently joined, or remand the action if it was not.

Boston Scientific's Senior Global Product Manager for Thoracic Endosurgery and Advanced Stenting, Mr. Kull, submitted an affidavit stating that Glens Falls was not involved with the design, manufacture, marketing or sale of the Ultraflex stent. He also stated that Glens Falls is a separate legal corporate entity from Boston Scientific, with different CEOs/chairmen, executive officers, corporate structures and corporate filings. Based on Mr. Kull's affidavit, defendants argue that they have met their burden under the Second Circuit's test for fraudulent joinder by showing that plaintiffs cannot state claims for strict products liability, breach of warranty, negligence or fraud.

Plaintiffs maintain that they sued Glens Falls on the reasonable belief that it was involved in manufacturing and marketing the Ultraflex stent. They refer to Boston Scientific's website. The website states that the company makes two types of metallic stents, which are fitted using specialized endoscopic equipment. The site says little about Glens Falls, but states that Glens

Falls "develops and manufactures market leading devices for cardiology, radiology, endosurgery and oncology." According to plaintiffs, the Ultraflex stent "is often used for treatment of persons with cancer" and "is inserted with a specialized type of endoscope," and plaintiffs therefore concluded that the Ultraflex stent was "manufactured at a plant that specializes in oncological and endosurgical devices." As a result, plaintiffs maintain that they have a good faith basis for naming Glens Falls.

## DISCUSSION

A party seeking to remove an action bears a "heavy burden" to prove the Court's subject matter jurisdiction. Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004). Federal courts must "scrupulously confine their own jurisdiction," Durove v. Fabian Transport Inc., 04 Civ. 7000 (RJH), 2004 U.S. Dist. LEXIS 25258, at *9 (S.D.N.Y. Dec. 10, 2004) (citing Shamrock Oil & Gas Corp. v. Sheets, et al., 313 U.S. 100, 109 (1941)), and factual and legal ambiguities must be resolved in favor of plaintiff. Id. It is not enough to suggest that plaintiffs' motive in joining a non-diverse defendant was to thwart removal; defendants must establish "by clear and convincing evidence" that plaintiff cannot state a cause of action in state court. Arsenault v. Congoleum Corp., 01 Civ. 10657 (LMM), 2002 U.S. Dist. LEXIS 5084, at *17 (S.D.N.Y. Mar. 26, 2002) ("A motive to prevent removal, by itself, does not render the joinder of a defendant fraudulent for removal purposes.") (citing Illinois Cent. R.R. Co. v. Sheegog, 215 U.S. 308, 316 (1909)).

In Pampillonia v. RJR Nabisco. Inc., 138 F.3d 459 (2d Cir. 1998), the Second Circuit outlined the standard for establishing fraudulent joinder of a non-diverse party: defendants seeking removal must demonstrate "by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the

pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Id. at 460-61. "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Id. The rationale for the rule is clearly to prevent plaintiffs from defeating a federal court's diversity jurisdiction and frustrating a defendant's right of removal "by merely joining as defendants parties with no real connection with the controversy." Id.

Courts have offered various interpretations of Pampillonia's "no possibility" test. Some have inserted the word "reasonable," making it "no reasonable possibility," or have changed it to "no reasonable basis." In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 280 (S.D.N.Y. 2001). These courts reason that the "no possibility language cannot be taken literally because then no case would meet the standard for fraudulent joinder." Id. at 280. Other courts, however, apply the phrase literally. Arseneault, 2002 U.S. Dist. LEXIS 5084, at *5 (suggesting that "the Court [of Appeals in Pampillonia] did not inadvertently use the language it did based on tests from other circuits which specifically reflect the "no possibility" formulation); see also Nemazee v. Premier, Inc., 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("[a]ny possibility of recovery, even slim, militates against a finding of fraudulent joinder"); Sonnenblick-Goldman Co. v. ITT Corp., 912 F. Supp. 85 (S.D.N.Y. 1996) ("In evaluating the existence of fraudulent joinder, the Court must determine whether the mere possibility exists that plaintiff can establish any cause of action against a defendant.").

I believe that the Second Circuit's holding should be applied literally. There is nothing ambiguous about the language of Pampillonia. The "no possibility" test requires the Court to determine that plaintiff has no claim as a matter of law. It does not envision a weighing of conflicting evidence to determine how likely it is that plaintiff will ultimately recover.

Moreover, literal application of the "no possibility" standard is fully consistent with the narrow construction that courts have placed on the right to remove. In addition, the Second Circuit's adoption of a "clear and convincing evidence" standard, the highest standard of proof that the law imposes in civil cases, see e.g., Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22 n. 11 (1991); Addington v. Texas, 441 U.S. 418 (1979), demonstrates how stringent it intended to make the "no possibility" test.

Contrary to those cases holding that literal adherence to the standard would render it meaningless, it is commonplace for claims to fail as a matter of law in federal court, and for that to be apparent to the court at the outset. Removed cases are no different. Cases against non-diverse defendants that fail to meet the standard of Rule 12(b)(6) present "no possibility" that plaintiff will recover; so do cases that are barred by statutes of limitation, res judicata, or many other affirmative defenses. See In re Briscoe, 448 F. 3d 201 (3rd Cir. May 15, 2006); Richey v. Upjohn Drug Co., 139 F. 3d 1313, 1319 (9th Cir. 1998); Green v. Amerada Hess Corp., 707 F. 2d 201 (5th Cir. 1983). Even if a removing defendant cannot obtain dismissal under Rule 12(b), many if not most claims that fail under Rule 56 will also present "no possibility" of recovery.

In the instant case, I am unable to conclude that there is "no possibility" that plaintiffs will recover against Glens Falls. To be sure, the claim seems weak, but that may be because only defendants know all of the facts. What plaintiffs know is that BSC manufactures a particular type of stent used in endosurgical cancer treatments, and BSC's subsidiary manufactures endosurgical and oncological devices. Defendants' affidavit disclaims involvement in manufacturing the particular stent that plaintiff alleges caused his injury, but that is not the whole story. Even putting aside the fact that plaintiffs have had no ability to test that affidavit, there may be numerous other ways in which Glens Falls has had input in or

involvement with the offending product. Defendants attack that possibility as "speculation," which is not unfair, but must be considered in the absence of any discovery between the parties.

In approaching the issue from this perspective, I have focused on the Second Circuit's reliance on cases from other circuits that have also adopted the "no possibility" standard. Pampillonia, 138 F.3d at 461. Some of those circuits have referred to a "summary judgment-like" standard, see e.g., Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, 99 F.3d 746 (5th Cir. 1996), which I believe is appropriate as the outer boundary of the "no possibility" test (Rule 12(b)(6) being the inner boundary). This is because it would be anomalous for a court to find that a defendant was joined as a "sham," and nevertheless find that, despite the sham, it lacks any mechanism under the Federal Rules to dismiss that defendant. If anything, to the extent there is a difference between the "no possibility" test and the standard for summary judgment under Rule 56, the former should be applied even more broadly, since there is no determination of substantive rights involved, but merely a question of forum selection. Thus, cases like this, where the facts relating to the merits of the claim are solely within the knowledge of the removing party, are particularly poor candidates for a court to find a sham removal.

Defendants' brief did not mention the standards applicable under Rule 12 or Rule 56, and I do not believe defendants could have met those standards at this stage of the case. The face of the complaint, while probably deficient against all defendants as to the fraud claim, is probably sufficient as to the minimal pleading requirements for the negligence and strict liability claims against all defendants. As to summary judgment, it is axiomatic that a defendant cannot prevail on summary judgment where it has sole knowledge of the facts and plaintiff has had no

opportunity for discovery. See Miller v. Wolpoff & Abramson, L.L.P., 321 F. 3d 292 (2d Cir. 2003). I thus cannot find that the Kull affidavit would be adequate to grant summary judgment.

At argument, defendants' counsel suggested that if there is an inability to meet the summary judgment standard, it can be addressed through Rule 56(f), permitting discovery on the limited issue of Glens Falls' potential liability, and then addressing the issue of remand. But this is exactly what the "no possibility" rule is meant to prevent. It makes little sense to create a mini-case on the threshold issue of which court should hear this dispute.

I am also concerned that finding a non-diverse defendant to be "sham", while lacking a basis to dismiss that defendant, would create unnecessary practical difficulties. As a party, Glens Falls is subject to party discovery. It would likely, and understandably, resist discovery on the basis of the Court's finding that it was a sham defendant. Yet without discovery, plaintiffs will never have the chance to inquire into whether and to what degree Glens Falls had involvement in the matters at issue.[1]

Finally, I note that this ruling may not finally foreclose BSC from removing this case. The statute allows removal of cases that are not removable when commenced, and which become removable after their commencement, within one of year of commencement. If plaintiffs' claim against Glens Falls is as lacking in merit as defendants contend, BSC can remove once the state court dismisses Glens Falls. Defendants' lament that the one year period is too short, particularly if plaintiffs take discovery of Glens Falls in state court. That, however, is a situation partially of defendants' own making, as they chose to remove despite the presence of a non-

[1] Defendants rely principally on In re Consol. Fen-Phen Cases, 03 CV 3081 (JG), 2003 U.S. Dist. LEXIS 20231 (E.D.N.Y. Nov. 12, 2003). The case is somewhat distinguishable on its facts, but in any event, I respectfully decline to follow it to the extent it supports defendants' argument. I note particularly the fact that the Fen-Phen court did not dismiss the local defendant, thus permitting a situation of having a sham defendant who was nevertheless not subject to dismissal.

diverse defendant, and then took no action in this Court to dismiss the allegedly sham defendant, thereby delaying resolution of the issue until now.

## CONCLUSION

This case is remanded to the Supreme Court of the State of New York, County of Suffolk. The Clerk is directed to close the file.

**SO ORDERED.**

Dated: Brooklyn, New York
September 18, 2006

/s/(BMC)

U.S.D.J.